**Norman L. JOHNSON, Ph.D.**

v.

**RESOURCES FOR HUMAN DEVEL-OPMENT, INC., Harvey Schwartz and Vicki Hayes.**

Civ. A. No. 93–CV–5360.

United States District Court, E.D. Pennsylvania.

Feb. 8, 1994.

Don Bailey, Bailey, Hardy & Alm, Harrisburg, PA, for plaintiff.

Joan R. Sheak, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Allentown, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil matter has been brought before the Court by motion of the defendants, Resources for Human Development, Inc. ("RHD"), Harvey Schwartz and Vicki Hayes to dismiss the constitutional claims raised in Count I and the pendent state law claim raised in Count II of plaintiff's complaint. For the reasons which follow, the motion shall be granted.

## I. HISTORY OF THE CASE

According to the averments set forth in the plaintiff's complaint, this case arose on June 15, 1993 when he was terminated from his position as a licensed clinical psychologist with the defendant RHD on the basis of his race. The plaintiff, who is black, further alleges that he was replaced by a less experienced and less qualified white person and that throughout the course of his employment with RHD, he and other black employees were repeatedly subjected to harassment and humiliation at the hands of less qualified and less experienced whites including the defendants. Dr. Johnson also asserts that black employees were treated differently at RHD than white employees with respect to work assignments, consideration for promotion and access to facilities and support services. All of these actions, plaintiff complains, violated the 1st, 5th, 13th and 14th amendments to the United States Constitution "pursuant to 42 U.S.C. § 1981." In Count II of his complaint, plaintiff endeavors to state a common law claim for wrongful discharge on the grounds that the defendants' acts of discharging him were in violation of public policy insofar as they were premised not only upon race, but also upon his alleged reports to RHD management and government officials about RHD's purported violations of various laws, regulations and public grant requirements.

## II. DISCUSSION

### A. STANDARDS APPLICABLE TO RULE 12(b)(6) MOTIONS TO DISMISS

Under the simplified and flexible pleading requirements in the Federal Rules of Civil Procedure, a complaint must provide a defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Williams v. New Castle County*, 970 F.2d 1260, 1265–1266 (3rd Cir. 1992) citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss under Rule 12(b)(6), the complaints' allegations are to be construed favorably to the pleader and a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.; Rogers v. Mount Union Borough by. Zook*, 816 F.Supp. 308, 312 (M.D.Pa.1993); *Flohr v. Pennsylvania Power & Light Co.*, 800 F.Supp. 1252, 1254 (E.D.Pa.1992). Thus, to survive a motion to dismiss, the pleading need not correctly categorize legal theories giving rise to the claims and the court is under a duty to examine the pleadings to determine if the allegations provide for relief under any theory. *Advanced Power Systems, Inc. v. Hi–Tech Systems, Inc.*, 801 F.Supp. 1450, 1460 (E.D.Pa.1992).

### B. PLAINTIFF'S CLAIMS UNDER THE 1ST, 5TH, 13TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION

Defendants first assert that to the extent that Count I of the instant complaint raises

claims for relief under the 1st, 5th, 13th and 14th amendments, those claims are properly dismissed by virtue of plaintiff's failure to allege the existence of government infringement.

In reviewing the language of the foregoing, we note at the outset that nowhere in plaintiff's complaint are there any allegations that could operate to state a claim upon which relief could be granted under either of these amendments. Indeed, the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

In like fashion, the Fifth Amendment states:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war of public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Thirteenth Amendment, in turn, prohibits the condition of slavery by virtue of the following language:

"Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"Section 2. Congress shall have power to enforce this article by appropriate legislation."

Finally, the Fourteenth Amendment states, in relevant part, at Section 1:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Central and common to most constitutional violations, particularly to those of the First and Fourteenth Amendments is the element of state action or governmental infringement. *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 567 (9th Cir.1987); *May v. Evansville–Vanderburgh School Corp.*, 787 F.2d 1105, 1109 (7th Cir.1986). Indeed it has repeatedly been held that private conduct, however wrongful or discriminatory it may be, is not shielded by and cannot be challenged under the Fourteenth Amendment. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

The test to determine the existence of state action is two-fold. First the complained-of deprivation must be caused by the exercise of some right or privilege created by the state or by a person for whom the state is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Lugar v. Edmondson*, 457 U.S. at 937, 102 S.Ct. at 2753–54; *Newman v. Legal Services Corp.*, 628 F.Supp. 535, 541 (D.D.C.1986). This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials or because his conduct is otherwise chargeable to the State. *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754. *See Also: Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

At bar, the plaintiff's complaint, which is premised upon his purportedly unlawful and improper termination from his employment as a clinical psychologist, is completely devoid of any of the necessary allega-

tions which are prerequisite to stating viable constitutional claims. To be sure, nowhere does plaintiff allege that any of the defendants are or were state officials or actors, that their conduct in firing and harassing him was somehow chargeable to or rendered on behalf of the government or any agency thereof, that RHD, Schwartz or Hayes received significant aid from the government or that he was terminated from his job through the exercise of some government-created right or privilege. Rather, plaintiff alleges only that RHD "is a corporation purportedly serving a variety of human social needs with central offices in Philadelphia, Pennsylvania at 4101 Kelly Drive, and that [defendants] Harvey Schwartz and Vicki Hayes [are] white adult citizen[s] of the United States, residence address[es] unknown who [are] employed by defendant RHD." These averments, without more, are obviously insufficient to state independent constitutional claims under the preceding amendments. Accordingly, defendants' motion to dismiss those claims (to the extent pleaded) from Count I of the complaint is granted.

### C. PLAINTIFF'S § 1981 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS, SCHWARTZ AND HAYES

Defendants Harvey Schwartz and Vicki Hayes also move to dismiss Dr. Johnson's claim against them individually for their alleged violation of 42 U.S.C. § 1981. Section 1981, of course, provides:

**(a) Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) Definition**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

 As a general rule, an individual, including a director, officer or agent of a corporation, may be liable for injuries suffered by third parties because of his torts, regardless of whether he acted on his own account or on behalf of the corporation. Similarly, an officer of a corporation who takes part in the commission of a tort by the corporation or whose corporation commits a tort under his direction or control can be held personally liable therefor. *Al–Khazraji v. St. Francis College,* 784 F.2d 505, 518 (3rd Cir.1986), aff'd, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Hough/Loew Associates, Inc. v. CLX Realty Co.,* 760 F.Supp. 1141, 1143 (E.D.Pa.1991), both citing *Zubik v. Zubik,* 384 F.2d 267, 275–276 (3rd Cir. 1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968).

 In like fashion, a claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the discriminatory action. *Allen v. Denver Public School Board,* 928 F.2d 978, 983 (10th Cir.1991). Accordingly, directors, officers and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable. *Al–Khazraji v. St. Francis College, supra.*

 Noticeably absent from the complaint in this case are *any* allegations that either of the individual defendants were personally involved with or engaged in the alleged discriminatory actions or that the alleged harassment, humiliation and discrimination of the plaintiff was conducted under the direction, supervision or control of either Ms. Hayes or Mr. Schwartz. Inasmuch as there is thus no affirmative link to causally

connect these defendants with the actions complained of, defendants' motion to dismiss the individual defendants from Count I must be granted.

### D. PLAINTIFF'S COMMON–LAW, STATE CLAIM FOR WRONGFUL DISCHARGE

Count II of plaintiff's complaint endeavors to state a cause of action for the tort of wrongful discharge on the grounds that "the actions of the defendants in discharging the plaintiff were in violation of public policy in that they were not only based upon race, but were also based upon plaintiff's reports to RHD management and to government officials about violations of laws, regulations, and public grant requirements which occurred at defendant RHD and which irregularities were known by all the defendants."

Pennsylvania law on wrongful discharge is well and firmly established. Indeed, it has long been recognized that, as a general rule in the Commonwealth of Pennsylvania, there is no common law cause of action against an employer for termination of an at-will employment relationship and an employment relationship may thus be severed at any time for any reason or for no reason at all. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 309 (1986). *See Also: Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991). Exceptions to this rule have been recognized in only the most limited of circumstances where discharges of at-will employees would threaten clear mandates of public policy. *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990); *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 918 (1989) citing *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). This public policy exception has been very narrowly drawn and has been applied in only rare instances where important issues of public policy are raised. *Reese v. Tom Hesser Chevrolet–BMW*, 413 Pa.Super. 168, 604 A.2d 1072, 1074 (1992). As the Pennsylvania Superior Court acknowledged in *Darlington v. General Electric, supra*, 504 A.2d at 306:

"Public Policy" is a term difficult to define. In *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 306, 476 A.2d 1340, 1343 (1984), Judge Cercone wrote:

A clear statement of what public policy actually consists is hindered by its varying manifestations. As the Supreme Court of New Jersey observed:

The sources of public policy [which may limit the employers' right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy ... Absent legislation, the judiciary must define the cause of action in case-by-case determinations.

Pennsylvania courts have held that employees may not be discharged for serving jury duty, nor for their refusal to submit to a polygraph test (as a statute forbids such testing), nor for reporting motor vehicle violations, nor for refusal to violate antitrust laws. An employee may not be discharged for refusal to participate in a lobbying effort as it is in contravention of his First Amendment rights. However, these cases represent exceptions to the rule. As we stated in *Rossi v. The Pennsylvania State University*, 340 Pa.Super. 39, 55, 489 A.2d 828, 836 (1985), there is no cause of action for an employee who was discharged after attempting "to assume management prerogatives." To allow such a cause of action in that instance "would have the unwise effect of transfering to the judicial forum the duty of evaluating the propriety of management decisions." "The company's failure to follow its own evaluation policies is also insufficient to state a cause of action for wrongful discharge."

(citations omitted)

Likewise, and notwithstanding the existence of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.*, it has repeatedly been held that allegations that an employee was wrongfully discharged for "whistleblowing" on his employer generally cannot withstand a dismissal motion. The Whistleblower Law provides, in pertinent part at §§ 1423 and 1424:

## § 1423. Protection of employees

**(a) Persons not to be discharged.**—No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges or employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

**(b) Discrimination prohibited.**—No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

## § 1424. Remedies

**(a) Civil action.**—A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation.

Section 1422 of the Law defines a "whistleblower" as "a person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority." An "employee," in turn, is defined as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body," and "public body" is said to be all of the following:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

(3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

 Thus, while the Pennsylvania Supreme Court has yet to interpret the Whistleblower statute, it nevertheless appears obvious that the law applies to and protects from retaliation only *public* employees who make a good faith report about an instance of wrongdoing or waste to an employer or appropriate authority. *Paralegal v. Lawyer,* 783 F.Supp. 230, 231 (E.D.Pa.1992); *Cohen v. Salick Health Care, Inc.,* 772 F.Supp. 1521, 1527 (E.D.Pa.1991). Moreover, there is no evidence or persuasive indication that the Whistleblower statute represents a codification of previously existing law such as is necessary to constitute conclusive evidence that a clear mandate of public policy is violated and to justify recognition of a cause of action for wrongful discharge in situations where a private employee whistleblows on his private employer.[1] *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1346 (3rd Cir.1990) *cert. denied,* 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991). There is nothing in the plaintiff's pleading in the instant matter which would suggest that the defendant could in any way be said to constitute a "public body" within the meaning of the Whistleblower law nor are there any averments which indicate that the plaintiff was somehow charged with the responsibility of overseeing the defendant's public grant program or reporting legal or regulatory violations to management or the appropriate authorities. We therefore cannot find that his termination was in contravention of a clear mandate of public policy or that he has stated a valid cause of action under Pennsylvania law for wrongful discharge. Count II of the complaint must also be dismissed.

An appropriate order follows.

**1.** In the absence of a *clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law, this Court is bound by the holdings of previous panels of the Third Circuit Court of Appeals. *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1343 (3rd Cir.1990).

*ORDER*

AND NOW, this 8th day of February, 1994, upon consideration of Defendants' Motion to Dismiss Portions of the Plaintiff's Complaint, it is hereby ORDERED that the Motion is GRANTED and Plaintiff's direct constitutional claims under the 1st, 5th, 13th and 14th Amendments and claims against Harvey Schwartz and Vicki Hayes are DISMISSED from Count I of the Complaint.

IT IS FURTHER ORDERED that Count II of Plaintiff's Complaint is DISMISSED for the reasons set forth in the foregoing Memorandum.