Melva WARD

v.

**CITY OF PAWTUCKET POLICE DEPARTMENT et al.**

No. 92–532–Appeal.

Supreme Court of Rhode Island.

April 15, 1994.

Charles Kirwan, Pawtucket, for plaintiff.

Jeffrey Kasle, St. Peter & Kasle, Providence, John T. Gannon, Christopher Fay, City Sol's. Office, Pawtucket, for defendant.

## OPINION

SHEA, Justice.

This case is before the Supreme Court pursuant to the appeal of the plaintiff from a Superior Court order granting the defendants' motion to dismiss. For the reasons that follow, we reverse the order of the trial court and remand for further proceedings.

The plaintiff, Melva Ward, brought an action in Superior Court against defendants, the city of Pawtucket Police Department and other city officials, (police department), alleging sexual discrimination and violation of the Rhode Island Civil Rights Act of 1990, P.L. 1990, ch. 231, § 1, now codified at G.L.1956 (1993 Reenactment) chapter 112 of title 42. The defendants moved to dismiss the action pursuant to Rule 12(b)(1) of the Superior Court Rules of Civil Procedure, asserting that plaintiff had failed to exhaust her administrative remedies as required by G.L.1956 (1986 Reenactment) chapter 5 of title 28 prior to filing the civil action.

The trial court granted defendants' motion and indicated that exhaustion of administrative remedies is a prerequisite to filing a civil action for sexual discrimination under the Rhode Island Civil Rights Act of 1990. We disagree.

In May 1975 plaintiff became the first female officer in the police department of the City of Pawtucket and the first woman to graduate from the Rhode Island Municipal Police Training Academy.[1] The plaintiff claimed that she had first applied to the police department in 1971. At that time she was informed that she would have to serve as a civilian clerk to Police Chief Joseph C. Roy for a year and a half because the chief was "not ready to have a woman on the force." No man had to serve in any apprenticeship or clerkship prior to joining the department.

The police department maintains a promotion list in which candidates are ranked numerically. To obtain the ranking, the department consults a list of objective criteria and weighs them according to a strict, contractually-required formula. The list is valid for two years from the date of issuance. In 1982 plaintiff was promoted to the rank of sergeant and in 1989 became the senior sergeant in the department. As of January 1, 1991, plaintiff was first in the sergeant category on the promotion list, with ten years of service in that rank. She asserts that no male had more than five years of service as sergeant.

On July 13, 1992, plaintiff learned that effective July 23, 1992, an allegedly less-qualified male would be promoted to the rank of lieutenant.[2] On July 16, 1992, plaintiff, through her attorney, advised the police department that a lawsuit would be filed if she were not promoted. On July 21, 1992, plaintiff completed and filed an intake questionnaire with the Rhode Island Commission for Human Rights (RICHR), the first step in pursuing possible administrative remedies.

---

1. At the time plaintiff filed her action, she was one of two women in the police department's force of 147 sworn officers.

2. In the last thirty to forty promotions, only four candidates who ranked first on the promotion list, including plaintiff, were passed over. The other three were suffering personal problems which impaired their work performance or faced allegations of serious misconduct.

On August 13, 1992, RICHR advised plaintiff that because of a backlog of cases, a complaint in her case would not be drafted for four to five months. By that time the promotion list would have expired and plaintiff would have had to take a retest and requalify for the new list.

On July 21, 1992, plaintiff brought suit against the police department. She sought and on July 22, 1992, obtained a temporary restraining order (TRO) in Superior Court enjoining the police department from promoting anyone to the permanent rank of lieutenant. The police department moved to dismiss her lawsuit pursuant to Rule 12(b)(1), alleging that the court did not have subject matter jurisdiction over the action until plaintiff had exhausted all administrative remedies. The motion was heard and granted in August 1992, and the TRO was dissolved.[3] Shortly thereafter, the police department promoted a male candidate to the position of lieutenant.

The plaintiff was not promoted as of November 14, 1992, when the promotion list expired, and was forced to retest for the new list. She again ranked first.

This court will affirm the granting of a motion to dismiss under Rule 12(b) only when it appears beyond a reasonable doubt that the plaintiff will not be entitled to relief under any conceivable set of facts that might be proven. See Berberian v. Solomon, 122 R.I. 259, 262, 405 A.2d 1178, 1180 (1979). In this case, the trial court held that plaintiff had no standing to bring her action in Superior Court until she had exhausted her administrative remedies.[4]

The Rhode Island Civil Rights Act of 1990, chapter 112 of title 42, was enacted as a reaction to the United States Supreme Court decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Court narrowly interpreted 42 U.S.C. § 1981, the Civil Rights Act of 1866.[5] Patterson, a black employee of the credit union, brought a § 1981 suit against her employer, alleging racial harassment and discrimination because the employer had failed to promote her and had discharged her because of her race. *Id.* at 169, 109 S.Ct. at 2368–69, 105 L.Ed.2d at 146. The Court held that § 1981 provided protection against racial discrimination in contract formation only. *Id.* at 171, 109 S.Ct. at 2369, 105 L.Ed.2d at 147. The Court further held that while the failure to promote Patterson may have been a violation of § 1981 because promotion involves contract formation, harassment or discrimination on the job is not actionable under § 1981. *Id.* at 179, 109 S.Ct. at 2373–74, 105 L.Ed.2d at 152.

■ The Rhode Island Civil Rights Act provides broad protection against all forms of discrimination in all phases of employment. Section 42–112–1 addresses and defines the rights to which all Rhode Island citizens are entitled and states:

"(a) All persons within the state, regardless of race, color, religion, sex, handicap, age, or country of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be sub-

---

3. The plaintiff subsequently filed a motion for reconsideration, the propriety of which was questioned by the police department and the trial court. Because this court is granting relief to plaintiff by reversing the dismissal and reinstating her claim, we shall not address the procedural or substantive validity of the motion for reconsideration.

4. The trial court properly rejected the police department's first ground for dismissal, that plaintiff's discrimination allegations could only be decided by submitting to the grievance and arbitration procedures established by the collective-bargaining agreement.

5. The act reads, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

ject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"(b) For purposes of this section, the right to 'make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property' shall include the making, performance, modification and termination of such contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.

"(c) Nothing contained herein shall be construed to affect chapter 14.1 of title 37, ch. 5.1 of title 28 or any other remedial programs designed to address past societal discrimination."

The remedies available to an aggrieved party, including the right to injunctive relief, are clearly established by § 42–112–2, which states:

"A person whose rights under the provision of § 42–112–1 have been violated may commence a civil action for injunctive and other appropriate equitable relief, and for the award of compensatory and exemplary damages. An aggrieved person who prevails in an action authorized by this section, in addition to other damages, shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court."

There is no language requiring, or even suggesting, that a plaintiff must first exhaust any or all administrative remedies before filing a civil action. There is no ambiguity in the statute, and reading such a requirement into the statute was error.

■ The trial court misread and misinterpreted § 42–112–1(c) as incorporating the requirement of exhaustion of administrative remedies found in chapter 5 of title 28, the Fair Employment Practices Act. Although § 42–112–1(c) refers to G.L.1956 (1986 Reenactment) § 28–5.1–1, as enacted by P.L.1988, ch. 149, § 1, the Equal Opportunity and Affirmative Action Act, not § 28–5–1 as the trial court stated, this confusion was not determinative. Rather, the lower court's error was in reading § 42–112–1(c) as affecting the remedies instead of the rights of aggrieved

parties. The clear legislative intent behind § 42–112–1(c) is to ensure that nothing in the Civil Rights Act would infringe upon the rights provided to victims of past and present discrimination through the statutorily established remedial programs, such as the Equal Opportunity and Affirmative Action Act. Section 42–112–1(c) does not address remedies. The procedures by which victims of discrimination can protect their rights and pursue available remedies are specifically provided for by § 42–112–2.

■ Legislative enactments will not be interpreted as meaningless or nugatory if any other construction is reasonably possible. *Sleboda v. Heirs at Law of Harris*, 508 A.2d 652, 657 (R.I.1986). To interpret § 42–112–1(c) as requiring exhaustion of all administrative remedies before filing a civil action would render § 42–112–2 a nullity. This provision creates a civil cause of action in a person whose rights under § 42–112–1 have been violated. It specifically states that an aggrieved party may seek injunctive, among other, relief.

■ The purpose of an injunction is to prevent imminent, irreparable injury. *In re State Employees' Unions*, 587 A.2d 919, 925 (R.I.1991). An injunction is an extraordinary remedy available only when there is no adequate remedy at law. *Id.* (citing *Brown v. Amaral*, 460 A.2d 7, 10 (R.I.1983)). Because of the imminent nature of the threatened harm, time is of the essence in any proceeding for injunctive relief. The plaintiff's is clearly the type of situation that the Legislature contemplated when it enacted § 42–112–2. The Rhode Island Commission for Human Rights indicated that it would take four to five months to draft a discrimination complaint on behalf of plaintiff. By that time, the original promotion list would have expired. Years could pass before an investigation was completed, during which time plaintiff would be denied her civil rights.

To require exhaustion of administrative remedies before seeking injunctive relief would destroy the effectiveness of such relief

and would fly in the face of the clear legislative intent. We refuse to embrace any statutory interpretation that has this result.

For these reasons the plaintiff's appeal is sustained, the order of the trial court is reversed, and the papers of the case are remanded to the Superior Court for further proceedings.