**Cynthia WYSS, Plaintiff,**

v.

**GENERAL DYNAMICS CORPORATION,** General Dynamics Corporation's Electric Boat Division's Health Insurance Plan, Doug Poole, Individually and in his capacity as Foreman of Electrical Shop # 903, and Paul Jeffrey, Individually and in his capacity as Supervisor of Electrical Shop # 903, Defendants.

No. 96–0539L.

United States District Court,
D. Rhode Island.

Oct. 7, 1998.

Matthew J. Brier, Pawtucket, RI, for plaintiff.

Rodger W. Lehr, Jr., General Dynamics Corp., Groton, CT, Neal J. McNamara, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

In this case, plaintiff, Cynthia Wyss, alleges sexual harassment and retaliation against her employer, General Dynamics Corporation ("General Dynamics"), her immediate supervisor, Paul Jeffrey ("Jeffrey"), and his supervisor Doug Poole ("Poole").

She brings suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (1994), the Rhode Island Fair Employment Practices Act ("FEPA"), R.I.Gen.Laws §§ 28–5–1 et seq. (1995), the Rhode Island Civil Rights Act ("RICRA"), R.I.Gen.Laws §§ 42–112–1 to –2 (1993), and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1994).

The only matter presently before this Court is the motion of Jeffrey and Poole to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They petition the Court to dismiss as to them Counts I and II of the Complaint alleging discrimination on the basis of sex and retaliation under Title VII, FEPA, and RICRA, on the ground that those statutes do not provide for individual liability by supervisory employees who have indulged in discriminatory conduct toward subordinates.

### *DISCUSSION*

I. *Legal Standard for Motion to Dismiss*

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* 5A Charles

Wright & Arthur Miller, Federal Practice and Procedure § 1357 (2d ed.1990).

## II. *Individual Liability of Defendants Jeffrey and Poole*

At issue is whether defendants Jeffrey and Poole can be held personally liable under Title VII, FEPA and RICRA. This writer decided these issues in favor of individual liability in *Iacampo v.. Hasbro Inc.*, 929 F.Supp. 562 (D.R.I.1996). This Court took this motion under advisement to gauge whether the case law has evolved in such a way that *Iacampo* is no longer good law in this district. The number of cases opposed to individual liability has multiplied, but the analysis has not evolved. The intervening cases offer no new rationale or doctrine. For the reasons stated in *Iacampo* and for additional reasons outlined below, this Court concludes that defendants Jeffrey and Poole are subject to personal liability under all three statutes.

## A. *Title VII*

■ It is unlawful under Title VII for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under Title VII, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person*" qualifies as an employer. Id. § 2000e(b) (emphasis added). Case law defines an agent "as any employee exercising supervisory power or control within a company." *Iacampo*, 929 F.Supp. at 571 (citing *Showalter v. Allison Reed Group, Inc.*, 767 F.Supp. 1205, 1210–11 (D.R.I.1991)); *see Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *rev'd in part, aff'd. in part,* 900 F.2d 27 (4th Cir. 1990).

The query before the Court is whether Title VII allows supervisors and other individuals to escape liability for their own discriminatory acts. Certainly, Title VII places respondeat superior liability on an employer for the acts of his or her agent, but the issue remains whether the agent can be held jointly and severally liable for the agent's own discrimination. The First Circuit has not ruled on this issue, *see Serapion v. Martinez*, 119 F.3d 982, 992 (1st Cir.1997), *cert denied,* —— U.S. ——, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998),[1] and this circuit's district courts have split on the issue, *see Iacampo*, 929 F.Supp. at 571–72 (collecting decisions). However, in recent years, the majority of circuits has agreed with defendants in this case that Congress did not intend individual liability under Title VII and analogous statutes.[2]

---

**1.** The plaintiff is misguided when she relies on *Scarfo v. Cabletron Systems, Inc.*, 54 F.3d 931, 952 (1st Cir.1995). In that case the First Circuit did not rule on individual liability. It merely decided that a district court did not commit plain error when it held that a supervisor could be liable because the law on this point was "in a state of evolving definition and uncertainty." *Scarfo*, 54 F.3d at 952.

The *Serapion* Court noted that *Scarfo* left the issue open. *See Serapion,* 119 F.3d at 992.

**2.** *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied,* 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir.1995); *Dici v. Pennsylvania*, 91 F.3d 542, 551–53 (3d Cir. 1996); *Sheridan v. E.I. DuPont*, 100 F.3d 1061, 1077–78 (3d Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.), *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Wathen v. General Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir.1997); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995); *Lenhardt v. Basic Inst. of Tech.*, 55 F.3d 377, 380–81 (8th Cir.1995); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Haynes v. Williams*, 88 F.3d 898, 898–901 (10th Cir.1996); *Cross v. Alabama State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir.1995).

In the Fourth Circuit, supervisors may be individually liable in Title VII cases where they wield significant control over plaintiffs and their conduct cannot be categorized as a plainly delegable duty. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 n. 1 (4th Cir.1994) (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *rev'd in part, aff'd. in relevant part,* 900 F.2d 27 (4th Cir.1990)); *see also Shoemaker v. Metro Info. Serv.*, 910 F.Supp. 259, 263–66 (E.D.Va.1996) (holding individual supervisors liable under *Birkbeck* and *Paroline* ).

Recognizing these recent cases, this Court, nevertheless, adheres to the holding in *Iacampo*. In deciding *Iacampo*, this Court took guidance from Judge Parker's dissent in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1318–24 (2d Cir.1995) (Parker, J., dissenting), which is the best reasoned and most comprehensive opinion written on this subject. Accordingly, this Court reiterates the views set forth in the *Tomka* dissent and in *Iacampo*, but in greater detail.

1. *Courts should look to a statute's language*

Courts must rely on the language of statutes passed by Congress. Both the Supreme Court and the First Circuit have emphasized this limited role.

> In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished.

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); *accord Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 295, 115 S.Ct. 2144, 2147, 132 L.Ed.2d 226 (1995); *Hogan v. Bangor & Aroostook RR. Co.*, 61 F.3d 1034, 1037 (1st Cir.1995); *Riva v. Massachusetts*, 61 F.3d 1003, 1007 (1st Cir.1995). "This long-standing view of statutory construction is grounded upon a jurisprudential interest in the separation of federal powers under the Constitution." *Tomka*, 66 F.3d at 1319 (Parker, J., dissenting).

This interest is so strong that the Supreme Court has consistently limited deviations from the plain meaning of language to the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enter. Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *accord In re Bajgar*, 104 F.3d 495, 497–98 (1st Cir.1997); *United States v. Flores*, 968 F.2d 1366, 1370 (1st Cir.1992). "In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enter.*, 489 U.S. at 242, 109 S.Ct. 1026; *accord Crooks v. Harrelson*, 282 U.S. 55, 59–60, 51 S.Ct. 49, 50–51, 75 L.Ed. 156 (1930) (noting that deviation from plain reading should be made in "rare and exceptional circumstances" and requiring that "there must be something to make plain the intent of Congress that the letter of the statute is not to prevail").

■ The statute's language need not be the perfect expression of every Congressional intent. It need only be consistent with one of the policies that motivated Congress, as the Supreme Court has said in a case about severance payments to corporate employees about to join the government:

> It is not our function to express either approval or disapproval of this kind of unconditional severance payment. We note only that a literal reading of the statute—which places a pre-Government service severance payment outside of the coverage of § 209(a)—is *consistent with one* of the policies that motivated the enactment of the statute.

*Crandon v. United States*, 494 U.S. 152, 168, 110 S.Ct. 997, 1006, 108 L.Ed.2d 132 (1990) (emphasis added). The facts of *Crandon* illuminate the Supreme Court's view of when these "rare and exceptional circumstances" have occurred.

*Crandon* overturned convictions of three former Boeing executives who received lump payments from the company to encourage them to leave their jobs to enter the federal executive branch. Federal law prohibited outside payments to federal employees, but the statute's literal reading limited criminal penalties to defendants who had been federal employees when the payment was made. The Supreme Court said the severance payments had a "somewhat nebulous character." *Id.* at 167, 110 S.Ct. at 1006. On the one hand, the *Crandon* Court noted, the Boeing payments certainly violated the rule against the appearance of conflicts of interest that had been one of the statutes' concerns. *See id.* at 167–68, 110 S.Ct. at 1006. But on the other hand, they did encourage qualified employees to offer their services to the federal

government, a policy that both President John F. Kennedy and Attorney General Robert Kennedy had promoted at the time the law was drafted. *See id.* at 168, 110 S.Ct. at 1006. The plain language controlled because it was consistent with even a single policy that motivated the enactment of the statute. *See id.; accord Crooks*, 282 U.S. at 60, 51 S.Ct. at 50–51.

Thus, a court should recognize that such deviations should be rare. They should occur where the statute's literal reading conflicts with itself or where there is demonstrable evidence that the literal reading is entirely at odds with the drafters' intentions.

In this case, the statute is unambiguous and there is neither an internal conflict nor a conflict with Congress' intent. *See Iacampo*, 929 F.Supp. at 572. The statute defines employer as a person with 15 or more employees or "any agent of such a person." 42 U.S.C. §§ 2000e(b). Thus this Court must begin with the assumption that the employer and the employer's agent are jointly and severally liable. There is no logical conflict in such tandem liability. Congress certainly intended Title VII to discourage discrimination. Assuming arguendo, as other circuit courts have done, that Congress also intended to protect small companies from litigation, there is no evidence that Congress intended for agents to escape liability. As Judge Parker wrote:

> a literal reading of the agent clause in Title VII suggests Congress not only intended to make discriminatory acts by both employers and their agents actionable under Title VII, but also, that Congress intended to make those who discriminate, both employers and agents acting under the cloak of authority of their employers, answerable, jointly and severally, for those discriminatory acts.

*Tomka*, 66 F.3d at 1320–21 (Parker J., dissenting) (emphasis in original).

2. *Response to findings of conflict between language and intent*

This Court is satisfied that the analysis to this point, as outlined in *Iacampo* and Judge Parker's *Tomka* dissent, provides sufficient grounds to deny the defendants' motion to dismiss them from the case. However, contradictory case law issued by other circuits requires this Court to expand on its rationale in defense of *Iacampo*. As noted above, a majority of circuits has held that the plain reading conflicts with Congress' intent that supervisors bear no individual liability under Title VII. This doctrine was born in *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), reached maturity in *Tomka*, and then became a self-perpetuating "emerging consensus." *See, e.g., Chatman v. Gentle Dental Ctr. of Waltham*, 973 F.Supp. 228, 237 (D.Mass.1997) (noting "emerging consensus"); *see also* Kathryn K. Hensiak, Comment, *When the Boss Steps Over the Line; Supervisor Liability Under Title VII*, 80 Marq.L.Rev. 645, 653 (1997) ("Though *Miller* was one of the first courts to reject supervisor liability, other courts have followed *Miller* blindly on this issue.").

The few circuits that thoroughly analyzed the issue have given three reasons for this doctrine: the exemption of small companies from liability; the calibration of damages to the size of the employer; and the former limitation of remedies to back pay and equitable remedies. *See, e.g., Tomka*, 66 F.3d at 1313–17; *Wathen v. General Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir.1997). None of these is persuasive. In each, the courts have clung to hints and to Congress' silence to disregard the plain language. Those courts have ignored their jurisprudential role and traditional agency principles. No court has offered a inherent flaw in dual liability or concrete evidence that Congress opposed it.

This Court emphasizes the importance of this "plain meaning of a statute" doctrine from *Ron Pair Enterprises, Crandon*, et. al because other courts appear to take the *Miller/Tomka* analysis as the starting point. *See, e.g., Acevedo Vargas v. Colon*, 2 F.Supp.2d 203, 206 (D.P.R.1998). Instead, courts should begin with the language and decide whether there is reason to ignore the plain meaning of the employer definition. Courts must accept their limited role.

Courts have sometimes exercised a high degree of ingenuity in the effort to find

justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter ... [T]he remedy lies with the law making authority, and not with the courts.

*Crooks,* 282 U.S. at 59–60, 51 S.Ct. at 50 (citations omitted); *accord Crandon,* 494 U.S. at 168, 110 S.Ct. at 1006.

To aid in this inquiry, the Supreme Court instructs us that "Congress wanted courts to look to agency principles for guidance." *Meritor Sav. Bank, FSB. v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (citing Restatement (Second) of Agency §§ 219–237 (1958)); *accord Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 2285, 141 L.Ed.2d 662 (1998), *Burlington Indus., Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 2269–70, 141 L.Ed.2d 633 (1998). *Meritor* itself outlines the contours of Title VII liability for sexual harassment consistent with traditional agency principles. While the issue of individual liability was not before the Court in *Meritor,* its focus upon traditional agency principles suggests that traditional joint and several liability between an agent and an employer is logically consistent with the Court's broader discussion of sexual harassment actionable under Title VII. *See Tomka,* 66 F.3d at 1320 (Parker, J., dissenting).

Judge Parker succinctly addressed this issue in *Tomka:* [T]he Restatement itself prescribes joint and several liability, as opposed to mere respondeat superior liability, for tortuous conduct committed against a third party by either an agent alone, or an agent together with that agent's principal. Restatement (Second) of Agency § 217B(1) (1958). If, as *Meritor* suggests, Congress intended to incorporate traditional agency principles in determining whether an agent's acts implicate Title VII liability, there is no inconsistency in reading the agent clause as evidence that Congress further intended to incorporate these same traditional agency principles with regard to the scope of that liability. Accordingly, I believe Title VII permits employers and their agents to be held jointly and severally liable for 'the tortuous conduct of an agent or that of agent and principal.'

*Tomka,* 66 F.3d at 1320 (Parker, J., dissenting) (citations omitted).

The flaws in the *Miller/Tomka* doctrine are most evident through a separate analysis of its three arguments.

### a) *The small company exception*

Title VII limits liability to employers with fifteen or more employees. *See* 42 U.S.C. § 2000e(b). The *Miller* court reasoned that the limitation was:

> "*in part* because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."

*Miller,* 991 F.2d at 587 (emphasis added).

But the *Miller* court offers no explanation why that is inconceivable. The two kinds of liability are completely different, and it seems logical, even likely, that Congress would choose to protect small companies and to hold liable the individual perpetrators of discrimination. The individual is liable because he or she committed discriminatory acts. The employer is liable not based on fault, but based on our social and economic policy.

Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of an employee, committed within the scope of the employment. The basis for the rule is decidedly *not* one of fault on the part of the employer; indeed, if the employer *were* at fault in some way, then he could be liable under general tort principles without resort to vicarious liability. *See generally* Fowler V. Harper et al., *The Law of Torts* §§ 26.1–26.2 (2d Ed.1986); W. Page Keeton et al., *Prosser and Keeton on the Law of*

*Torts,* § 69 (5th Ed.1984). Rather, the basis for the rule is one of social and economic policy. That policy holds that employers should be responsible for their employees' torts committed in the scope of employment because of the fictitious "control" of the employer over the employee, or the employer's ability to pass along the costs of liability as part of doing business, or simply the need for a "deep pocket" in light of the presumed inability of an employee to pay a judgment. *See* Harper et. al., *supra,* at § 26.1–26.3,. at 2–15.

■ The crucial point here is that the fault for harm remains that of the individual supervisor; respondeat superior liability does not remove that fault from the actual wrongdoer and transfer it to the employer. Rather, the doctrine simply entails the liability, without fault, of the employer, based on the social and economic policies noted above. "[T]he wrongdoer held vicariously liable (master, principal) is not a tortfeasor at all except by the legal fiction created by the law of agency." Fowler et al., *supra,* at § 10.1, at 3 n. 6.

Despite the rhetoric of the *Tomka* majority, its reading of Title VII does nothing to protect individual employees except by creating judicial waste. If an innocent employer pays a judgment, clearly that employer can seek indemnification against the discriminating supervisory employee under common law principles. *See A and B Const., Inc. v. Atlas Roofing and Skylight Co.,* 867 F.Supp. 100, 113 (D.R.I.1994). The *Tomka* majority merely creates a tortured process. Why should a wrongdoer be insulated from liability directly to the victim who may have no opportunity to collect where the employer goes bankrupt? And why should there be two suits when one would suffice to resolve all liability matters?

As a practical matter, employees are rarely sued for their own wrongdoing; indeed, their presumed lack of "deep pockets" is a basis for the existence of the rule in the first place. This reality, however, does not mean that the employee *could not* be sued should a plaintiff so desire.

[B]y and large vicarious liability means that *A* (e.g., the employer) alone pays the damages. It is true that vicarious liability on the part of *A* is not necessarily inconsistent with liability on the part of *B* [the employee], too. Indeed in most cases both *A* and *B* are theoretically liable under the current law. Yet in the vast majority of cases plaintiff seeks satisfaction from the employer alone.

Fowler et al., *supra,* at § 26.1 at 5. "[I]t is generally held today that the master and servant, principal and agent, and other parties on which the law imposes vicarious liability, are jointly and severally liable. . . ." *Id.* at § 10.1, at 15. This is proper as a matter of common sense and fairness; holding an "innocent" employer liable for social and economic policy reasons, while excusing the actual wrongdoer, would be an aberration.

This point is important in reviewing the definition of "employer" in Title VII. Employers would still have been liable for employees' actions under principles of respondeat superior even if Congress had not included the words "any agent of such a person" within the definition of "employer". In that situation, *only* the employer would bear liability because Congress would not have established liability for the employee himself or herself. Thus, applying the rule of construction against linguistic surplusage, *see Flores,* 968 F.2d at 1370–71, the inclusion of the word "agent" must add liability for the employee, beyond the sole liability by the employer that would otherwise already exist.

b) *The calculation of damages*

The current Title VII sets a sliding scale of caps that link an employer's size to its liability for compensation and punitive damages. Several courts have noted that the law did not indicate a cap for individuals. *See, e.g., Wathen,* 115 F.3d at 406; *Tomka,* 66 F.3d at 1315; *EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1281 (7th Cir.1995); *Miller,* 991 F.2d at 587–8 n. 2. "That omission implies it did not consider individuals liable." *AIC Security,* 55 F.3d at 1281; *accord Sheridan v. E.I. DuPont,* 100 F.3d 1061, 1077 (3d Cir. 1996).

■ However, a court should not look for an "implication" of Congressional intent and

should not infer intent from silence. The Supreme Court rule, as noted above, is that the statute's language must be "demonstrably at odds" with the intentions of its drafters. *Ron Pair Enter. Inc.*, 489 U.S. at 242, 109 S.Ct. at 1031. The language prevails if it "is consistent with one of the policies that motivated the enactment of the statute." *Crandon*, 494 U.S. at 168, 110 S.Ct. at 1006.

Certainly, one of the Congressional intents in Title VII must be to discourage discrimination. There can be no more direct method than placing liability directly on the supervisors and agents who oversee employees in the workplace. Courts may not ignore the plain language merely because Congress was silent about caps for individuals. Nor may they ignore it because it would be unfair or illogical to hold a supervisor for a large company liable for a different amount than a supervisor for a smaller company. The plain language should prevail. "It is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in a particular case lies with Congress and not with this Court. Congress may amend the statute; we may not." *Griffin*, 458 U.S. at 576, 102 S.Ct. at 3253 (awarding more than $300,000 in judgment against a defendant that had improperly withheld $412.50 in wages).

#### c) *The limitation of remedies*

Before the Civil Rights Act of 1991, reinstatement and back pay were the only remedies available to a successful Title VII plaintiff. Although damages are currently available, courts such as the *Tomka* majority noted that these are "equitable remedies which are most appropriately provided by employers, defined in the traditional sense of the word." *Tomka*, 66 F.3d at 1314. Because the remedies are "appropriately" or "most naturally" provided by employers, the majority decided Congress intended that individuals would not provide them.

Again, this is an implication or a hint at Congressional intent. The *Tomka* majority admitted that individuals can and, in fact, had been held liable under Title VII for back pay awards. *See Tomka*, 66 F.3d at 1315 n.

12. *See, e.g., Cornwell v. Robinson*, 23 F.3d 694 (2d Cir.1994); *EEOC v. Vucitech*, 842 F.2d 936 (7th Cir.1988); *Showalter*, 767 F.Supp. 1205. In fact, the agency principles noted above show that employers and their agents are often held jointly and severally liable. The significance of joint and several liability is that a plaintiff may enforce the judgment against the party who more "appropriately" or more "naturally" can afford to pay the verdict. But that does not preclude a plaintiff from trying to recover from the rare individual wealthier than the employer.

Moreover, the 1991 Amendments increased the remedies available to plaintiff's under Title VII affording punitive and compensatory damages. *See* 42 U.S.C. § 2000e–5(g) (outlining current remedies). Even absent a specific statement of Congressional intent to include individual liability, the new remedies puncture the pre–1991 argument that an individual could not provide the remedies of back pay and reinstatement. In fact, the Amendments suggest that Congress created new remedies to effectuate their original intent to hold individuals personally liable.

### B. *FEPA*

■ The Rhode Island Fair Employment Practices Act (FEPA) recognizes the "right of all individuals in this state to equal employment opportunities, regardless of race or color, religion, sex." R.I.Gen .Laws § 28–5–5 (1995). FEPA furthers "the public policy of this state to foster the employment of all individuals in this state in accordance with their fullest capacities." Id. § 28–5–3. Under FEPA, employers are liable. *See* id. § 28–5–7(1). The term employer "includes the state and all political subdivisions thereof and any person in this state employing four (4) or more individuals, *and any person acting in the interest of an employer directly or indirectly.*" Id. § 28–5–6(6)(i) (emphasis . added). Moreover, FEPA states:

It shall be unlawful employment practice: ... (6) For any person, whether or not an employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful

employment practice, ... or to attempt directly or indirectly to commit any act declared by this section to be an unlawful practice ...

Id. § 28–5–7(6). For the reasons stated below, this Court decides that FEPA does, indeed, provide for individual liability.

Defendants, in a footnote, argue that "the Rhode Island Superior Court has applied the same analytical framework to cases arising under the Rhode Island FEPA as federal courts have applied to Title VII." (Defs.' Memo. of Law In Supp. of Their Mot. to Dismiss, at 2–3, n. 1). Accordingly, defendants contend that the same arguments they made for dismissing the Title VII claim should apply to the FEPA claim.

Certainly, FEPA is the Rhode Island analog to Title VII. *See Lieberman–Sack, D.M.D. v. Harvard Community Health Plan of New England, Inc.,* 882 F.Supp. 249, 254 (D.R.I.1995) (noting that the Rhode Island Supreme Court instructed courts to follow Title VII case law for guidance in construing FEPA especially since both have been amended similarly) (citing *Newport Shipyard, Inc. v. Rhode Island Comm. for Human Rights,* 484 A.2d 893 (R.I.1984)); *Marley v. UPS, Inc.,* 665 F.Supp. 119, 128 (D.R.I. 1987) (stating that FEPA is "nearly identical in its remedial provision to its federal analog, Title VII"). On that basis alone, it can be concluded that FEPA, like Title VII, creates liability for supervisors as "employers."

■ Moreover, the language in FEPA provides an independent grounds for individual liability because, on this point, it is broader than Title VII. In *Iacampo,* this Court focused on § 28–5–7 that reaches beyond employers to forbid discriminatory acts by any individual employee. *See Iacampo,* 929 F.Supp. at 572–73. This language does not limit itself to "employers" as defined by Title VII. It explicitly reaches "any person, whether or not an employer." R.I.Gen.Laws § 28–5–7(6). It covers any effort "to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful employment practice." Id.

In the case at bar, plaintiff alleges that defendants Jeffrey and Poole, through their participation in the harassment and failure to investigate other incidents when directly reported to them, were integral participants. (*See* Pl.'s Verified Compl., ¶¶ 9–25.) Plaintiff sufficiently alleges a violation of FEPA by a person covered by the statute.

## C. *RICRA*

■ Plaintiff also alleges violations of the Rhode Island Civil Rights Act of 1990 (RICRA), R.I.Gen.Laws §§ 42–112–1 to –2 (1993). RICRA is modeled after the Federal Civil Rights Act, 42 U.S.C. § 1981 (1994). RICRA provides in part:

(a) All persons within the state, regardless of race, color, religion, sex, handicap, age, or country of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property ... (b) For purposes of this section, the right to "make and enforce contracts ..." shall include the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.

R.I.Gen.Laws § 42–112–1(a), (b). RICRA provides for equitable and injunctive relief, compensatory and exemplary damages, and attorneys' fees. *See* id. § 42–112–2. Once again, the issue presented is whether individual supervisory employees can be liable for damages under RICRA.

In a footnote, defendants argue that RICRA does not refer to "employers" at all and that it was enacted as a reaction to the United States Supreme Court decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in which the Court narrowly interpreted § 1981. (Def.s' Memo. in Supp. of Their Mot. to Dismiss, at 3 n. 1.) Defendants acknowledge that RICRA was intended "to expand upon the rights secured by 42 U.S.C. § 1981." (Id.) Defendants are correct in

these assertions, but defendants carry the argument too far. They contend that because employers are liable under § 1981 based on respondeat superior, "co-workers" are not liable. (Id.) (citing *Lewis–Kearns v. Mayflower Transit, Inc.,* 932 F.Supp. 1061, 1069 (N.D.Ill.1996)); *Hodges v. Washington Tennis Serv. Int'l. Inc.,* 870 F.Supp. 386, 387 (D.D.C.1994)). Defendants' argument that supervisors are included within the gambit of "co-workers," and therefore, supervisors are not subject to liability under RICRA is unpersuasive for several reasons.

 First, an employer's liability under respondeat superior is not mutually exclusive of an individual employee's joint and several liability. At common law, a court could hold an employer and employee jointly and severally liable for the employee's wrongful conduct.

Second, even if RICRA should be analyzed using § 1981 precedent, it is hardly settled that supervisors are not liable. *Cf., Kerr–Selgas v. American Airlines, Inc.,* 69 F.3d 1205 (1st Cir.1995) (affirming on other grounds a § 1981 judgment against a supervisor); *Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927 (5th Cir.1996) (same); *see Johnson v. Resources for Human Development,* 843 F.Supp. 974, 978 (E.D.Pa.1994) (holding that individuals may become personally liable when they intentionally cause an infringement of rights protected by Section 1981); *Coley v. M & M Mars, Inc.,* 461 F.Supp. 1073, 1076 (D.Ga.1978) (holding that supervisors could be held individually liable if the defendants interfered with plaintiff's contractual relationship). Under these cases, § 1981 provides for personal liability against supervisors, but not co-workers. Defendants' argument fails because of the failure to draw that critical distinction. "In particular, directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable." *Al–Khazraji v. Saint Francis College,* 784 F.2d 505, 518 (3d Cir. 1986). *See also Hernandez v. Wangen,* 938 F.Supp. 1052, 1064 (D.P.R.1996).

The Rhode Island Supreme Court's decision in *Ward v. City of Pawtucket Police Dep't,* 639 A.2d 1379, 1381 (R.I.1994), was clear that RICRA was enacted to extend § 1981's protection against discrimination to all phases of employment. Based on this precedent, this Court has previously determined that RICRA provides for individual liability. *See Iacampo,* 929 F.Supp. at 573. In *Iacampo,* there was reference to RICRA's expansion of § 1981's protections.

> RICRA protects plaintiffs against any discrimination which interferes with the 'benefits, terms, and conditions' of the employment relationship—whether it takes the form of disparate impact, disparate treatment, retaliation, or harassment. The decision in *Ward* mandates that courts read the RICRA as broadly as possible—which means *that if individuals discriminate in ways that violate the statute, then they must be liable under it.*

*Iacampo,* 929 F.Supp. at 573 (emphasis added) (relying on *Ward,* 639 A.2d at 1381, which states that RICRA "provides broad protection against all forms of discrimination in all phases of employment"). Therefore, both the statute's broad language and the *Ward* opinion make it clear that RICRA contemplates individual liability.

 To articulate the rule, this Court looks to similar holdings under § 1981 that individual liability under RICRA is "predicated on the actor's personal involvement and there must therefore be some affirmative link to usually connect the actor with the discriminatory action." *Johnson,* 843 F.Supp. at 978 (citing *Allen v. Denver Pub. Sch. Bd.,* 928 F.2d 978, 983 (10th Cir.1991)). The complaint, therefore, must contain allegations that the defendant was "personally involved with or engage in the alleged discriminatory actions or that the alleged harassment, humiliation and discrimination against the plaintiff was conducted under the direction, supervision or control of the defendant." *Id.* In this case, plaintiff has sufficiently pled in the Complaint that defendants Jeffrey and Poole were personally involved with the discriminatory acts and that they personally interfered with the terms and con-

ditions of her employment with General Dynamics. (*See* Pl.'s Verified Compl. ¶¶ 9–25.)

## CONCLUSION

For the foregoing reasons, the motion to dismiss Counts I and II as to Poole and Jeffrey is denied.

It is so Ordered.