EARL JOSEPH SUITOR *vs.* J. JOSEPH NUGENT.

APRIL 21, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This is an action of trespass for malicious use of process brought against the defendant in his capacity as attorney general of this state. The defendant's demurrer to the declaration was sustained by a justice of the superior court, and to that ruling the plaintiff has prosecuted an exception to this court.

It appears that plaintiff, who had been indicted by a grand jury, was arrested pursuant to a capias issued for his apprehension by the superior court on November 14, 1962 on motion of defendant here. The instant suit followed, and the trial justice sustained the demurrer on the ground that defendant, as a prosecuting attorney, had immunity from liability in civil action for acts performed within his jurisdiction. In this court plaintiff contends that the trial court erred in sustaining the demurrer for the reason that defendant is not a prosecuting attorney and therefore is not entitled to immunity from civil lia-

bility as a judicial officer for acts performed in the discharge of his duties.

The attorney general, in our opinion, performs the duties of a public prosecutor in this state. In *Orabona* v. *Linscott,* 49, R. I. 443, 445, we said: "Under the constitution and by long established practice great power and responsibility for the enforcement of the criminal laws are lodged in the attorney general." It is clear from that language that the public officer in this state who enforces or administers the criminal law is the attorney general. That the legislature has never deemed it necessary to provide for a system of county prosecutors or district attorneys is persuasive of the validity of this view. However, because the issue raised here goes to the extent to which immunity from civil liability, if any, attaches to his actions in enforcing the criminal law, it is necessary to ascertain to what extent such actions partake of the character of a judicial act to which attaches the immunity given judicial officers.

In *Commonwealth ex rel. Minerd* v. *Margiotti,* 325 Pa. 17, 21, the court said: "The office of Attorney General is an ancient one. It came into being as a necessary adjunct in the administration of the common law of England and was transported to America in the early days of the establishment of government in the colonies as part of their English derived common law." The court noted that with the office came the common-law powers and duties thereof to the extent that they were not abridged by constitutional provision and commented that important among these common-law powers was the control of and participation in criminal prosecutions. This fairly describes the situation that exists in Rhode Island. The constitution did not purport to create such an office but recognized it as existing and provided for continuance of the powers and duties exercised by its occupant prior to the adoption of the constitution. Such provision is contained in art. VII,

sec. 12, of the constitution of this state: "The duties and powers of the secretary, attorney-general, and general treasurer, shall be the same under this constitution as are now established, or as from time to time may be prescribed by law." It is clear then that in the instant circumstances the attorney general may exercise validly such powers as were possessed by the occupant of that office at the time of the adoption of the constitution. It is clear also that most of these powers involved in the administration of the criminal law required an exercise of discretion on the part of the attorney general and therefore were in the nature of a judicial act.

It is abundantly clear from an examination of the cases that many of the powers exercised by the attorney general in the enforcement of the criminal law require an exercise of discretion or judgment and so are judicial in nature. He has the exclusive power to enter a nolle prosequi. *Rogers* v. *Hill*, 22 R. I. 496. He may exercise this power to nol-pros a part of an indictment. *McGrane, for Writ of Habeas Corpus,* 47 R. I. 106. His control over the docket for the trial of criminal cases is absolute subject only to the right of a defendant to demand a trial, and absent such a demand he may decide when, if ever, his indictment will be set down for trial. *Orabona* v. *Linscott, supra.* The administration of the criminal law of necessity requires the performance of acts which, while involving an exercise of judgment or discretion, are of such nature as would render improper their performance by a court charged with hearing and determining the issue of guilt.

We must not overlook the significance of the constitutional provision which continues the powers of the attorney general exercisable by him under the charter and under the common law. The constitution obviously contemplated the exercise of powers by the attorney general which, while not exercises of the judicial power conferred on the judiciary in art. X, sec. 1, were acts judicial in

nature of the kind to which Chief Justice Ames referred in his discussion of the judicial power of this state in *G. & D. Taylor & Co.* v. *Place,* 4 R. I. 324. There the Chief Justice, quoting with approval from *United States* v. *Ferreira,* 13 Howard 40, 48, said at page 334: " 'The powers conferred by these acts of congress upon the judge, as well as the secretary, are, it is true, judicial in their nature; for judgment and discretion must be exercised by both of them. * * * A power of this description may constitutionally be conferred on a secretary as well as a commissioner, but is not *judicial* in either case, in the sense in which judicial power is granted by the constitution, to the courts of the United States.' " This differentiation between the judicial power and powers that partake of the character of a judicial act, in our opinion, was the basis of the distinction drawn by this court in *State* v. *Fay,* 65 R. I. 304. In that case a statute empowering the attorney general to move for the imposition of sentence after conviction was challenged on the ground that it violated the provisions of art. X, sec. 1, in that it delegated to the attorney general the judicial power of the state. This court said in that case at page 311: "There is a clear distinction between judicial power, such as is established by the constitution, and a discretionary power which merely involves the exercise of judgment by the attorney general in connection with a matter properly within the scope of his office."

It is clear from the language above quoted that this court recognizes that the attorney general, in acting to enforce the criminal law, performs acts which require an exercise of judgment or discretion and are in the nature of judicial acts and that, when so acting, he acts as a quasi-judicial officer. What constitutes a quasi-judicial exercise of authority has been aptly stated in *State* v. *Winne,* 21 N. J. Super. 180. There it was said at page 198: "Where a power rests in judgment or discretion, so that

it is of a judicial nature or character, but does not involve the exercise of the functions of a judge, or is conferred upon an officer other than a judicial officer, it is generally deemed 'quasi judicial.' *Throop, Public Officers, Sec.* 533. It is defined as a term applied to the action and discretion of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." It is our view then that the attorney general, in administering the criminal law of this state, exercises a quasi-judicial power.

We are convinced that the attorney general in his administration of the criminal law should, with respect to such action, have the same immunity as that which attaches to the acts of judicial officers. We are unable to agree that the immunity should be made dependent upon the motives with which he acts if it be within the obligation of his office to enforce the criminal law. We do agree with the statement in *Nadeau* v. *Marchessault,* 112 Vt. 309, 313, that "There is ample authority for the principle that where a judicial act is within the general authority of a public officer the motive underlying its performance cannot be made the subject of inquiry in a private suit against him." It is our opinion that considerations of the most compelling nature require us to extend the immunity to actions taken within the jurisdiction of the attorney general.

That this extension of the immunity of the attorney general could result in cases of hardship is conceded. But we are unable to agree that such instances of unfairness would constitute a sufficient cause to expose that officer to liability for the malicious institution of action, thus requiring him to defend every suit in which malice may be alleged. In *Gregoire* v. *Biddle,* 177 F.2d 579, 581, the court said by way of explaining the extension of the im-

62

munity to cases alleged to have been instituted maliciously: "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

The instant case, in our opinion, clearly demonstrates the extent of the threat to the enforcement of the criminal law were the attorney general required to defend against allegations of a malicious institution of action. This case arose out of his motion for the issuance of a capias to apprehend plaintiff here, who had not appeared to answer an indictment. This is a common and invariably necessary practice in the enforcement of the criminal law. The extent of the harassment to which the attorney general would be subject if required to defend such suits because malice is alleged is readily imaginable, and it is reasonable to anticipate that it would substantially impair the prosecution of the criminal law.

By way of summation we refer to *Cawley* v. *Warren*, 216 F.2d 74. In that case the court noted that the absolute immunity of judges from liability in such cases extended to prosecuting attorneys and went on to quote from *Bradley* v. *Fisher*, 13 Wall. 335, as to the scope of the rule and the reasons given in its support as follows: " 'Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry. * * * If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a

judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the main tenance of the action.' "

The plaintiff's exception is overruled, and the case is remitted to the superior court for further procedings.

*Pontarelli & Berberian, Aram K. Berberian,* for plaintiff.

*Francis A. Kelleher,* for defendant.