CONKLIN LIMESTONE CO., INC.

v.

STATE of Rhode Island, DEPARTMENT
OF ENVIRONMENTAL
MANAGEMENT et al.

Dennis J. ROBERTS II

v.

CONKLIN LIMESTONE CO., INC.

No. 84–402-Appeal.

Supreme Court of Rhode Island.

March 19, 1985.

John D. Lynch, Lynch, DiLuglio, Pannone & Costello, Warwick, for plaintiff.

Arlene Violet, Atty. Gen., Daniel J. Schatz, Sp. Asst. Atty. Gen., Charles E. DiLeva, Dept. of Justice, Env. Defense Sect., Providence, for defendant.

## OPINION

MURRAY, Justice.

This appeal encompasses two complaints for equitable relief that were consolidated for trial. Both actions were brought pursuant to G.L.1956 (1976 Reenactment)

§§ 2–1–18 through 2–1–27.[1] On July 11, 1980, the plaintiff, Conklin Limestone Co., (hereinafter Conklin), filed its complaint in response to a cease and desist order issued by the defendant, Department of Environmental Management (hereinafter DEM) requiring the plaintiff to refrain from any further alteration of "the flood plain of a fresh water river" on the plaintiff's property and to restore the wetlands to their original state.[2] The plaintiff sought to enjoin enforcement of the cease and desist order, sought declaratory judgment that the 1974 amendments to the Wetlands Act were unconstitutional, and finally sought compensation in the amount of $10,000,000 for confiscation of its property. On July 18, 1980, the defendant, DEM, sought an order requiring plaintiff to apply for and obtain a permit prior to any further filling, grading or excavation on its property and an injunction from any alterations of the wetlands without first obtaining a permit.[3] The trial justice granted a permanent injunction to Conklin preventing DEM from interfering further with the operation of its business and dismissed the state's complaint. The state's appeal from both cases is sustained. We reverse the judgments below and remand this case to the Superior Court with directions to enter judgment dismissing Conklin's complaint and requiring Conklin to apply for a permit prior to any further alterations of the wetlands in question. The Superior Court should proceed with an evidentiary hearing concerning the state's request for restoration of the wetlands.

Conklin owns property in Lincoln, Rhode Island, upon which it operates a limestone quarry. The Moshassuck River crosses the property. Pursuant to an inspection of plaintiff's property conducted on April 8, 1980, DEM issued the cease and desist order of May 6, 1980 instructing Conklin to cease diverting the Moshassuck River, discharging sediment into wetlands, and filling flood plain in contravention to the Wetlands Act, § 2–1–21. The DEM order of May 6, 1980, stated that the company could request an administrative hearing to challenge the order, however, no such hearing was requested or held. Rather, plaintiff filed its complaint on July 11, 1980, and successfully obtained a restraining order against DEM's cease and desist order. Conklin, in its complaint, did not contest the existence of freshwater wetlands or that such wetlands were altered. Instead, Conklin stated that it was forced to alter the "stream and/or river" in question in order to continue profitable, safe operation. The DEM's complaint followed on July 18, 1980, requesting that plaintiff obtain the necessary permit prior to any further filling and that plaintiff be enjoined from making any further alterations without first obtaining a permit. The DEM did not seek at trial to have Conklin rectify its prior unpermitted alterations.

The trial justice concluded that the Wetlands Act did not apply to the instant situation and dismissed the state's complaint. Furthermore, the trial justice granted Conklin's request in its complaint for a

---

1. For convenience, we will refer to this act as the "Wetlands Act."

2. General Laws 1956 (1976 Reenactment) § 2–1–24, as amended by P.L.1980, ch. 406, § 10, entitled, "Notice to cease operation and relief in equity—Penalty[,]" grants the director of DEM the power to order a "violator" to cease and desist operations and/or restore wetlands to their original state as far as possible. A violation is defined as a commencement of activity without first obtaining the requisite approval of the director of DEM pursuant to § 2–1–21, or a violation of any of the director's rules and regulations.

3. General Laws 1956 (1976 Reenactment) § 2–1–21 entitled

"Approval of director," provides that "[n]o person, firm, industry, company, corporation * * * may excavate; drain; fill; place trash * * * or other materials or effluents upon; divert water flows into or out of * * * change, add to or take from or otherwise alter the character of any fresh water wetland as herein defined without first obtaining the approval of the director of the department of natural resources."

permanent injunction against the state which appeals now from both judgments.

It is appropriate at this point to review briefly the purpose and intent of the Wetlands Act. Section 2–1–18 of the act contains an express "[d]eclaration of intent" which includes the following language

"[w]hereas, the protection of swamps, marshes and other fresh water wetlands from random, unnecessary, and/or undesirable drainage, excavation, filling, encroachment, or any other form of disturbance or destruction is recognized as being in the best public interest and essential to the health, welfare, and general well being of the general populace and essential to the protection of property and life during times of flood or other disaster affecting water levels or water supply, therefore, the provisions of the following sections are intended to preserve and regulate the use of such swamps, marshlands and wetlands."

The next section of the act, § 2–1–19, contains a statement on the "public policy" behind the act which is to preserve the purity and integrity of the swamps, marshes, and other freshwater wetlands of this state.

The director of DEM is authorized by § 2–1–20.2 to designate which areas are to be classified as wetlands and is entitled to obtain relief in equity or by prerogative writ (in Superior Court) whenever such relief is necessary, pursuant to § 2–1–24. Prior to altering any freshwater wetland, the director's approval must be sought under § 2–1–21(a) by applying for a permit in compliance with procedures set forth in § 2–1–22, as amended by P.L.1980, ch. 216, § 1. If such approval has not been obtained, the director is empowered to order the violator to cease and desist impermissible activities and/or to restore wetlands to their original state as much as possible.

The sole issue on appeal is whether the trial justice erred in dismissing the state's request for equitable relief and granting the relief sought by Conklin.

The state raises several meritorious arguments concerning this issue. First, it reiterates the position it took in its answer to Conklin's complaint that Conklin was not entitled to judicial relief since it failed to exhaust its administrative remedies. The notice of violation contained the following language:

"Pursuant to RIGL Section 42–17.1–2 and the regulations adopted pursuant to RIGL Sections 2–1–18 et sequel, you may request, in writing, within ten (10) days, a hearing to show cause why the aforementioned order should not remain in effect."

Conklin did not request a hearing and sought judicial relief instead. Pursuant to the Administrative Procedures Act, judicial review is accorded any person who has exhausted all administrative remedies available to him/her within an agency and is aggrieved by a final decision in a contested case. General Laws 1956 (1984 Reenactment) § 42–35–15(a). This court has stated that the legislative intent in enacting § 42–35–15(a) was to provide a single and exclusive method of obtaining judicial review of agency decisions; that is, only after exhaustion of administrative remedies. *New England Telephone & Telegraph Co. v. Fascio*, 105 R.I. 711, 715, 254 A.2d 758, 761 (1969). Conklin defends that it could not comply technically with the DEM requirements for making application for a permit to alter wetlands since it was impossible to show the requested "plan" of where the vein of limestone would be in the next three or five years. Such impossibility, Conklin asserts, amounted to being equivalent to an exhaustion of Conklin's administrative remedies. This argument is legally untenable. Applying for a permit prior to seeking judicial relief is the exclusive remedial method specified under the act. Proper procedure is to apply for a permit, and if denied, an appeal to the Superior Court, in accordance with § 2–1–21 and the Administrative Procedures Act made applicable by § 2–1–20.1, is in order. We conclude that the state's position on this issue is correct and that the trial jus-

tice clearly erred by failing to dismiss Conklin's complaint for failure to exhaust administrative remedies.

The state also claims that the trial justice clearly erred in concluding that the Wetlands Act did not apply to either complaint, and in disregarding expert testimony regarding the wetlands in question.

■ We conclude that the trial justice erred in finding that the Wetlands Act did not apply to the instant situation. His conclusion that "as a fact that this is not an incident that comes under the Wetlands Act" was clearly erroneous. Evidently, he based this conclusion upon his findings that the land was a meadow before Conklin "proceeded to divert water from the stream" and that the land in question was "wet" as a result of the company's actions. However, these latter findings are irrelevant to the question of applicability of the Wetlands Act in the instant case since the area in question was shown to be at least three different types of wetlands—swamp, flood plain, and river as defined in § 2–1–20.[4] Even if the trial justice was correct in finding that the land in question was naturally wet by virtue of Conklin's activities, such a finding does not preclude the existence of other wetlands that existed before the land became wet. Similarly, the existence of a meadow does not preclude the existence of a wetland. In addition, federal and state expert testimony revealed that the act applied to the activities of the company and by his own testimony, Mr. Conklin admitted to the following activities regarding the Moshassuck River: diverting, piping, filling, and placing fill within fifty feet of a freshwater swamp on the property. Clearly, the activities described by Mr. Conklin himself, which were carried out without a permit from DEM, were conducted in contravention to the act.

There is, finally, one last point of error which we must address. The trial justice rendered a supplemental decision two days after rendering his final decision dismissing the state's complaint and granting a permanent injunction against DEM from interfering further with Conklin's activities. This supplemental decision was made without the presence of counsel from DEM. The trial justice stated, "I would like to point out on the record that this procedure used by the Conklin Limestone Co., Inc. of diverting water from the stream to the quarry and back to the stream has been taking place for many years prior to the adoption of the Wetlands Act, so-called."

■ It appears from this statement that the trial justice was under the impression that Conklin was somehow exempt from the act through a "grandfather clause" mechanism. However, the Wetlands Act does not authorize any exemptions from its requirements and the necessity for obtaining a permit is clearly mandated in § 2–1–21. Furthermore, in his decision only two days earlier, the trial justice had concluded that the Wetlands Act did not apply to the incident at all. Thus, it appears that the trial justice was attempting to "cover" himself by rendering this supplemental decision and was essentially reneging on his earlier position of inapplicability of the act and instead, attempting to find an exemption for Conklin.

We conclude that all of the state's claims have merit and that the trial justice clearly erred in dismissing the state's request for equitable relief and granting the equitable relief sought by Conklin.

There is an important area of the law with respect to the Wetlands Act which we would like to employ the instant case to address and clarify. The act authorizes both criminal and civil actions. Pursuant to § 2–1–24(a), the director of DEM may institute criminal prosecution for violations of the act, in district court, in the name of the state. Such prosecutions shall be conducted by the attorney general. The fol-

---

**4.** Section 2–1–20, as amended by P.L.1979, ch. 20, § 1, is the definitional section of the act which contains definitions for the various types of wetlands such as flood plain, freshwater wetland, pond, marsh, river bank, swamp, and river.

lowing paragraph contained in this same section also authorizes the director to obtain relief in equity or by prerogative writ in Superior Court whenever necessary for the proper performance of his duties under §§ 2–1–18 to 2–1–24, inclusive. This latter paragraph authorizes a civil action requiring the appropriate civil burden of proof and it was pursuant to this authority that the instant case brought by the state, for equitable relief, was sought.

We sustain the state's appeal in both cases, reverse the judgments below, and remand with directions to the Superior Court to enter judgment dismissing Conklin's complaint and requiring Conklin to seek a permit prior to any further alterations of the wetlands in question. The Superior Court should proceed with an evidentiary hearing concerning the state's prayer for restoration of the wetlands.