Simon RICHARDSON

v.

### RHODE ISLAND DEPARTMENT OF EDUCATION et al.

No. 2007–155–Appeal.

Supreme Court of Rhode Island.

May 28, 2008.

Simon Richardson, pro se, Plaintiff.

Anne T. Turilli, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiff, Simon Richardson (plaintiff), appeals *pro se* from an entry of summary judgment in favor of the defendants, Rhode Island Department of Education (RIDE); Kathleen Murray, a RIDE hearing officer, (hearing officer); and Peter McWalters, the RIDE Commissioner (commissioner).[1]  In granting summary judgment, the trial justice first found that the hearing officer enjoyed quasi-judicial immunity from suit for actions taken in her capacity as a hearing officer; she also ruled that the plaintiff had not exhausted his administrative remedies before bringing suit in the Superior Court.  This case came before the Supreme Court for oral argument on May 7, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument.  We affirm.

## I

## Facts and Travel

The plaintiff was employed as a teacher with the Providence public schools in 1995.  The behavior at issue in this case, however, began shortly after plaintiff was transferred to Classical High School in September 2002.  Prior to this transfer, plaintiff had been considered an above-average teacher with no documented misconduct.  School administrators alleged that, after his transfer, plaintiff's conduct and his pedagogical choices in the classroom became inappropriate.  In response to plaintiff's classroom behavior, he was placed on leave with pay.

School administrators further alleged that plaintiff violated the terms of his leave by returning to school premises after he was instructed to stay away.  Finally, plaintiff allegedly made inappropriate contact with one of his former students.  On May 13, 2003, the superintendent of schools informed plaintiff that she intended to recommend to the school board that he be dismissed, citing plaintiff's inappropriate behavior, both before and after his suspension.  On May 20, the Providence School Board held a hearing.  The board subsequently voted to terminate plaintiff for inappropriate conduct, inappropriate student contact, and insubordination.  On December 26, 2003, plaintiff filed an appeal with the commissioner, and the case was assigned to the hearing officer.  The hearing officer held evidentiary hearings in the spring of 2004.

On May 25, 2005, the commissioner issued a decision affirming the board's dismissal of plaintiff.  The hearing officer included the following findings of fact in the decision.  On October 18, 2002, plaintiff instructed his ninth-grade students to read a work entitled *The Fashion Book*, a book that contained partial nudity.  On the same day, plaintiff showed his tenth-grade class portions of "The Exorcist," an R-rated film.  The plaintiff also distributed a syllabus to his two tenth-grade English classes that included assignments such as "Hammer Day," "Bell Day," and "Handgun Day."  On November 14, in accordance with the syllabus, plaintiff's students brought hammers to school, which they used to break rocks in a nearby field.  According to the hearing officer's findings,

---

1.  Although plaintiff named a "John Doe" and a "Jane Doe" in his complaint, he does not address these unknown parties in his papers before this Court.

the students did not wear protective eye gear during this exercise.

Then, on November 18, 2002, when Classical High School was scheduled to receive a visit from an accrediting agency, plaintiff spray-painted the words "Welcome to the Happy Place" on a school wall. During the accreditation visit, plaintiff distributed balloons to his students and instructed them to decorate them with what the hearing officer's decision described as "anti-establishment slogans." That same day, plaintiff was placed on leave and restricted from being "physically present on Providence School Department property." According to the hearing officer's findings, plaintiff subsequently visited both Hope High School and Mount Pleasant High School. From November 26, 2002, to December 4, 2002, plaintiff briefly was hospitalized.

According to the hearing officer's findings, while on leave, plaintiff also engaged in a series of inappropriate meetings with a student. On December 6, 2002, plaintiff went to a female student's workplace and spoke with her for approximately forty-five minutes. During this conversation, plaintiff discussed his negative opinion of a school administrator and offered to find the student a better job. The student described plaintiff as standing "uncomfortably close" during this encounter. Later that evening, plaintiff returned to the same student's workplace and left an envelope for her. The envelope contained several pictures of plaintiff in "sexually suggestive poses" with a female. The next day plaintiff returned to the same student's workplace, at which time the student's manager notified the police. The student later reported that she remained fearful of plaintiff for several months after the alleged incident.

The hearing officer submitted her recommendation to the commissioner for approval. The commissioner issued a decision affirming the board's decision to terminate, and plaintiff appealed to the Board of Regents for Elementary and Secondary Education (Board of Regents). On May 24, 2006, before the Board of Regents rendered its decision on his pending appeal,[2] plaintiff filed the instant action in the Superior Court.[3] The defendants thereafter filed a motion to dismiss pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure, arguing that the hearing officer was protected by quasi-judicial immunity and that plaintiff had failed to exhaust his administrative remedies. On February 6, 2007, a hearing was held before the trial justice at which time she granted defendants' motion on both grounds. An order granting partial final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure was entered on March 2, 2007. The plaintiff timely ap-

**2.** The Board of Regents for Elementary and Secondary Education (Board of Regents) has since rejected plaintiff's appeal, and he has appealed that decision to the Superior Court.

**3.** The typical appeals process for grievances brought by tenured teachers is set forth in G.L.1956 § 16–13–4 and requires appeal of the Board of Regents's decision to the Superior Court. "Because the Legislature failed to provide a vehicle for review of the action of the Superior Court in reviewing actions taken by the Board of Regents, this [C]ourt estab-

lished that review of the Superior Court's action will be had by way of a petition for common-law certiorari." *Bochner v. Providence School Committee*, 490 A.2d 37, 40 (R.I. 1985). In this case, however, we accepted plaintiff's notice of appeal because the complaint was filed outside the process established by § 16–13–4, which is why it was dismissed for failure to exhaust administrative remedies. This procedure does not constitute a rejection of *Bochner*, and it should not be interpreted as such.

pealed the trial justice's ruling to this Court.

## II

## Analysis

The plaintiff appeals the trial justice's decision granting defendants' motion for summary judgment on two grounds. First, plaintiff argues that the trial justice erred in holding that RIDE hearing officers are protected by quasi-judicial immunity, both because hearing officers are employees of the executive branch and because the Americans with Disabilities Act (ADA) abrogated sovereign immunity. Second, because he alleges civil rights violations, plaintiff argues that the trial justice erred in holding that he was required to exhaust his administrative remedies.

## A

### Standard of Review

■ "When this Court reviews a grant of a summary-judgment motion, we conduct a *de novo* review, applying the same standards as the motion justice." *Carrozza v. Carrozza*, 944 A.2d 161, 164 (R.I.2008) (citing *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I.2007)). "Summary judgment is proper if no genuine issues of material fact are evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any * * *.'" *Angell v. Union Fire District of South Kingstown*, 935 A.2d 943, 945 (R.I.2007) (quoting Super. R. Civ. P. 56(c)).

## B

### Quasi–Judicial Immunity

The plaintiff argues that quasi-judicial immunity does not apply in this case because RIDE hearing officers are employed in the executive branch and because his claim alleges a civil rights violation. We address each argument in turn.

### 1

### Applicability to RIDE Hearing Officers

The plaintiff alleges that RIDE hearing officers are government officials employed in the executive branch, and therefore quasi-judicial immunity should not apply to them. The plaintiff's argument misconceives both the nature and applicability of quasi-judicial immunity.

■ To determine whether an agency hearing officer is shielded by quasi-judicial immunity, this Court employs an analysis patterned after the federal system that looks to "the nature of the function performed" by the hearing officer. *Mall at Coventry Joint Venture v. McLeod*, 721 A.2d 865, 869 (R.I.1998) (citing *Butz v. Economou*, 438 U.S. 478, 508–16, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Accordingly, an agency hearing officer who is acting in a role that is "functionally comparable to that of a trial judge" will enjoy quasi-judicial immunity from suit for those actions. *Id.* (citing *Butz*, 438 U.S. at 513, 516, 98 S.Ct. 2894).

■ Furthermore, we have held that quasi-judicial immunity attaches to "agents of the state" who perform an official function comparable to that of a trial judge, not just members of the judiciary. *McLeod*, 721 A.2d at 869; *Psilopoulos v. State*, 636 A.2d 727, 727 (R.I.1994). Once attached, quasi-judicial immunity affords immunity from suit, rather than mere immunity from damages. *Estate of Sherman v. Almeida*, 747 A.2d 470, 474 (R.I.2000) ("judicial immunity is not overcome by allegations of bad faith or malice") (quoting *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). This admittedly expansive form of immunity ensures that hearing officers will "be allowed to render deci-

sions free from fear that they might face an action for damages from litigants who might be dissatisfied with the agency's action in * * * deciding a proceeding." *McLeod*, 721 A.2d at 869 (citing *Butz*, 438 U.S. at 516, 98 S.Ct. 2894); *Calhoun v. City of Providence*, 120 R.I. 619, 631, 390 A.2d 350, 356 (1978) (stating that judges must be able to function "freely, independently, and untrammeled by the possibilities of personal liability").

■ It is clear that RIDE hearing officers enjoy quasi-judicial immunity from suit for actions taken in their role as hearing officers. They schedule hearings, take evidence, consider the law, and participate in the issuance of decisions—all official functions comparable to those performed by a trial judge. Without the shield of quasi-judicial immunity, such hearing officers would live in constant fear of litigation from parties disgruntled by an adverse decision. It would be difficult to ask anyone to perform the function of an administrative hearing officer if that person was required to live in constant fear of retaliatory litigation. We therefore conclude that RIDE hearing officers are immune from suit for those actions performed in their official decision-making capacity as hearing officers.

■ With respect to the hearing officer in this case, plaintiff alleges that she "violated logic, applicable laws, and the [p]laintiff's [c]ivil [r]ights." The actions plaintiff cites to support his claim involve the hearing officer's conduct at the hearing, her taking of evidence, and ultimately, the decision she issued. All these actions were taken in the hearing officer's official decision-making role and are "functionally comparable to that of a trial judge." *McLeod*, 721 A.2d at 869. The actions of the hearing officer at issue in this case constitute precisely the type of conduct that quasi-judicial immunity is intended to

protect. We therefore conclude that because the law is clear and there are no genuine issues of material fact remaining with respect to the hearing officer's immunity from suit in this case, the trial justice properly granted defendants' motion for summary judgment.

## 2

### Applicability to Claims under the Americans with Disabilities Act

The plaintiff further argues that because his complaint alleges discrimination under the ADA, quasi-judicial immunity should not apply to this particular claim. He supports his argument by asserting that the United States Supreme Court, in *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), recognized that the ADA abrogated the states' sovereign immunity for claims brought under that act. This argument also lacks merit.

■ Initially, plaintiff correctly notes that the ADA abrogated sovereign immunity for purposes of ADA suits against the states. *Georgia*, 546 U.S. at 154, 126 S.Ct. 877 (stating that the ADA contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity"). Even so, this Court is not inclined to interpret a statutory abrogation of sovereign immunity for a particular cause of action as a repeal of common-law judicial immunity. *McLeod*, 721 A.2d at 869–70 (citing *Calhoun v. City of Providence*, 120 R.I. 619, 390 A.2d 350 (1978)).

The purpose of common-law judicial and quasi-judicial immunity is to protect the integrity of the adjudicative process. This Court, as well as courts in other jurisdictions, consistently has preserved common-law judicial and quasi-judicial immunity, even when sovereign immunity has been

abrogated by statute. *See, e.g., Guttman v. Khalsa,* 446 F.3d 1027, 1032 (10th Cir. 2006) (preserving quasi-judicial immunity in an ADA suit against a medical board hearing officer); *Duvall v. County of Kitsap,* 260 F.3d 1124, 1133 (9th Cir.2001) (preserving judicial immunity in an ADA suit against a judge); *Almeida,* 747 A.2d at 474 ("this Court has routinely refused to recognize any attempt to weaken the bulwarks of judicial immunity").

■ We therefore conclude that the ADA's statutory abrogation of state sovereign immunity did not repeal common-law quasi-judicial immunity for agency hearing officers acting in their official decision-making capacity.

## C

**Exhaustion of Administrative Remedies**

Even if the hearing officer had not been immune from suit, the trial justice properly held that plaintiff failed to exhaust his administrative remedies afforded under G.L. 1956 chapter 13 of title 16.[4] The plaintiff argues that this Court abrogated the exhaustion requirement for civil rights actions in *Ward v. City of Pawtucket Police Department,* 639 A.2d 1379 (R.I.1994). The plaintiff's argument lacks merit.

■ "It is well settled that a plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." *Arnold v. Lebel,* 941 A.2d 813, 818 (R.I.2007) (quoting *Rhode Island Employment Security Alliance, Local 401, S.E.I.U. v. State Department of Employment and Training,* 788 A.2d 465, 467 (R.I.2002)). Moreover,

this Court has "indicated [its] strong preference for proceeding with an administrative procedure through judicial review as opposed to instituting a separate action as was sought to be done in [this] case." *McLeod,* 721 A.2d at 870 (citing *Greenwich Bay Yacht Basin Associates v. Brown,* 537 A.2d 988, 993 (R.I.1988)). Furthermore, this Court previously has held that appeals taken pursuant to § 16–13–4 are subject to the same exhaustion requirement as administrative appeals taken pursuant to the Administrative Procedures Act, G.L. 1956 chapter 35 of title 42. *Latham v. Rhode Island Department of Education,* 116 R.I. 245, 248, 355 A.2d 400, 402 (1976).

■ It is true that this Court recognizes an exception to the exhaustion requirement when "exhaustion of administrative remedies would be futile." *Arnold,* 941 A.2d at 818 (quoting *Rhode Island Employment Security Alliance,* 788 A.2d at 467). In addition, plaintiff cites a case suggesting that civil rights claims seeking injunctive relief are not subject to the exhaustion requirement. *See Ward,* 639 A.2d at 1382 ("To require exhaustion of administrative remedies before seeking injunctive relief would destroy the effectiveness of such relief."). This case represents a specific application of the general rule that exhaustion is not required when it "would be futile or would destroy the effectiveness of the relief sought." *Almeida v. Plasters' and Cement Masons' Local 40 Pension Fund,* 722 A.2d 257, 259 (R.I. 1998) (citing *Ward,* 639 A.2d at 1382–83).

■ In this case, plaintiff did not exhaust his administrative remedies. When plaintiff filed his complaint, he still was

---

4. The plaintiff appears to argue that appeals, such as this one, not covered by Rhode Island's Administrative Procedures Act (APA), are procedurally suspect. This Court already has stated "that the statutory procedures at issue in this case are consistent with the requirements of the due process clause." *Barber v. Exeter–West Greenwich School Committee,* 418 A.2d 13, 20 (R.I.1980) (referring to hearing procedures established in chapter 13 of title 16).

awaiting a decision from the Board of Regents. The Board of Regents since has issued its opinion, and plaintiff has appealed that decision to the Superior Court in the normal course. Furthermore, plaintiff's suggestion that *Ward* creates an exception in this case is unavailing. The plaintiff did not seek injunctive relief, but rather sought actual and punitive damages. Requiring exhaustion in this case will not render the relief sought ineffective.

Finally, exhaustion would not be futile in this case. Many of the plaintiff's allegations concern the substance of the hearing officer's decision and can be resolved through the normal administrative appeals process established by § 16–13–4. We therefore conclude that even if the hearing officer was not protected by quasi-judicial immunity, and we have held that she was, the plaintiff's claim was nonetheless properly dismissed for failure to exhaust his administrative remedies.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, granting the defendants' motion to dismiss. The record shall be remanded to the Superior Court.